CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 19 2019

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SAMSUNG S10 MOBILE DEVICE; APPLE iPAD MOBILE DEVICE; SAMSUNG GALAXY 8 MOBILE DEVICE; AND A SECOND SAMSUNG GALAXY 8 MOBILE DEVICE, CURRENTLY STORED IN THE DRUG ENFORCEMENT ADMINISTRATION EVIDENCE VAULT | Case No. 7:19mj89 |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Ryan Sloan, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property described in Attachment A—a Samsung S10 mobile device; an Apple iPad; a Samsung Galaxy 8 mobile device, and another Samsung Galaxy 8 mobile device—which currently are in law enforcement possession in the Drug Enforcement Administration evidence vault, and the extraction from that property of electronically stored information described in Attachment B.

2. I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code, and am empowered by law to conduct investigations of, and to make arrests for, offenses in violation of Title 18 and Title 21 of the United States Code.

3. I am a Task Force Officer with the Drug Enforcement Administration (DEA), and have been appointed in this capacity since September 2015. I have been employed by the Roanoke

Police Department since October 2008. Prior to my appointment as a Task Force Officer, I spent two years within the Roanoke City Police Department assigned to the Patrol Bureau, two years assigned to the Street Investigations Unit, and three years assigned to the Narcotics and Organized Crime Unit. During these assignments, I made narcotics arrests that have led to convictions at both the state and federal levels. I have received training in the detection, investigation, and prosecution of controlled substance traffickers. I have conducted and assisted investigations involving unlawful possession and distribution of controlled substances by individuals working alone and within the scope of larger conspiracies, under the state and federal drug laws. I have participated in the preparation and execution of numerous arrest and search warrants for criminal offenses involving distribution of controlled substances. I am familiar with the methods and patterns of illicit drug trafficking at the street and wholesale level. I know from my training and experience that items such as firearms and mobile cellular devices are commonly used to facilitate drug trafficking. I am further aware that the memory contents of mobile cellular devices often contain information of significant evidentiary value in these types of investigations.

4. The facts in this affidavit come from my training and experience as well as information obtained from other law enforcement officers and interviews with witnesses. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. This affidavit is submitted in support of a warrant to authorize the search and retrieval of data and other electronic information stored or otherwise contained in the mobile cellular devices described in Attachment A, which may constitute and contain records, fruits, instrumentalities and evidence of violations of Title 21, United States Code, Sections 846 and/or 841(a) – distribution of and/or conspiracy to distribute controlled substances.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6. The property to be searched is as follows:

   a. A Samsung S10 mobile device, located and seized during execution of a federal warrant to search the residence located at 4580 Mews Hill Drive in Roanoke, Virginia. This device is currently stored at the Drug Enforcement Administration, located at 105 Franklin Road, Suite 200, in Roanoke, Virginia.

   b. An Apple iPad mobile device, located and seized during execution of a federal warrant to search the residence located at 4580 Mews Hill Drive in Roanoke, Virginia. This device is currently stored at the Drug Enforcement Administration, located at 105 Franklin Road, Suite 200, in Roanoke, Virginia.

   c. A Samsung Galaxy 8 mobile device, located and seized during execution of a federal warrant to search the residence located at 3433 Signal Hill in Roanoke, Virginia. This device is currently stored at the Drug Enforcement Administration, located at 105 Franklin Road, Suite 200, in Roanoke, Virginia.

   d. A Samsung Galaxy 8 mobile device, located and seized during execution of a federal warrant to search the residence located at 3433 Signal Hill in Roanoke, Virginia. This device is currently stored at the Drug Enforcement Administration, located at 105 Franklin Road, Suite 200, in Roanoke, Virginia.

7. The applied-for warrant would authorize the forensic examination of these devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## STATEMENT OF PROBABLE CAUSE

1. Over the past month, the DEA Roanoke Resident Office (DEA-Roanoke), working in conjunction with the Roanoke Valley Regional Drug Unit (HIDTA) investigated a narcotics conspiracy involving several individuals, including Aminee DAVENPORT and Anthony BARNETT. Through the course of this investigation, DAVENPORT and BARNETT were identified as a source of supply for heroin in the Roanoke Valley.

2. BARNETT and DAVENPORT have a longstanding relationship and multiple children in common, though they are not married. DAVENPORT resides with her children at the 4580 Mews Hill address, while BARNETT resides at 3433 Signal Hill. During the course of the investigation, law enforcement learned that BARNETT and DAVENPORT also used the residence located at 5056 Youngwood, in Roanoke, as a stash house for the narcotics operation.

3. During the initial stages of the investigation, law enforcement made contact with a Source of Information – SOI, a self-admitted narcotics distributor in the Roanoke Valley who had regular dealings with BARNETT. Based on information provided by the SOI, it was the SOI's common practice to receive narcotics from BARNETT in a fronting arrangement, pursuant to which the SOI maintained a running drug debt with BARNETT.

4. BARNETT was arrested on or about July 20, 2019 on state charges of malicious wounding, felony eluding, and firearms charges relating to a daytime shootout at a Roanoke restaurant in which BARNETT was involved. Because BARNETT was detained at the Roanoke City Jail on those charges, DAVENPORT continued to distribute narcotics on behalf of the conspiracy in BARNETT's absence, at his direction. Recorded jail calls between the two of them established that BARNETT was directing DAVENPORT how to locate, weigh and distribute narcotics in the midst of controlled purchases by law enforcement.

4

5. For example, law enforcement made a controlled purchase of approximately four ounces of heroin from DAVENPORT on or about July 24, 2019 at DAVENPORT's Mews Hill address. After the SOI ordered the drugs by phone, surveillance units watched DAVENPORT travel from her Mews Hill apartment to the Signal Hill address for just a few minutes, and then to the Youngwood residence.

6. Law enforcement could determine from the date and time of BARNETT's jail calls exactly when he was speaking with DAVENPORT on July 24. During the 5-10 minute period that she was in the Youngwood residence, BARNETT was instructing DAVENPORT in a recorded jail call how to weigh and package drugs, telling her to measure out "$112.00 (112 grams)," which, "with the jump (packaging)" would be "$113.00 (113 grams)," and reminding her to secure payment from the SOI against the existing drug debt.[1] DAVENPORT returned to her 4580 Mews Hill residence after the call with BARNETT and sold the SOI approximately 114 grams of heroin.

7. Law enforcement subsequently conducted numerous controlled purchases of narcotics from DAVENPORT, which were arranged by calls placed to numbers associated with DAVENPORT.

8. DAVENPORT appeared to be supported and assisted in the narcotics operation by BARNETT's parents, mother Mary WILLIAMS and step father Michael WILLIAMS, who reside at the Signal Hill address and provided access to the Youngwood address as well. A truck

---

[1] Words in parentheses contain what your affiant knows through training and experience to be the definition of the immediately preceding street term, as used in the local drug trade. Your affiant has developed knowledge of such terms through investigation of drug crimes, which commonly involves reading and interpreting text and other electronic communications between persons engaged in drug transactions.

5

in Michael WILLIAMS' name is registered to the Youngwood address. The truck was present at both the Youngwood and Signal Hill residences at various times during the narcotics operation, while DAVENPORT was inside each residence to retrieve drugs. Mary WILLIAMS also used this truck during a controlled purchase from DAVENPORT to travel to DAVENPORT's Mews Hill apartment. During a set-up call by the SOI to DAVENPORT, DAVENPORT indicated that it would be a while before she would be ready to conduct the transaction. Following the call, law enforcement observed Mary WILLIAMS arrive at DAVENPORT's apartment in the truck and enter the apartment with a small bag. Following WILLIAMS' visit, DAVENPORT advised the SOI by phone that she was ready to do the deal, which then occurred inside DAVENPORT's apartment.

9. Agents obtained federal warrants to search the Mews Hill, Signal Hill, and Youngwood residences following the above and other controlled purchases from DAVENPORT. The searches, conducted on August 7, 2019, resulted in seizure of approximately a kilo of cocaine, one-half kilo of methamphetamine, more than 500 grams of heroin, and approximately $25,000 in cash from the residences Michael and Mary WILLIAMS shared with BARNETT and DAVENPORT at Youngwood and Signal Hill.

10. Michael and Mary WILLIAMS were home at the Signal Hill address at the time of the search. Agents found $24,920.00 in currency in the WILLIAMS' bedroom, a portion of it in one of their dresser drawers and the remainder in a bag wedged between the dresser and the wall. Agents also seized approximately one-half kilo of methamphetamine from a spare

6

bedroom across the hall from their room.[2] Mary WILLIAMS claimed that all of the cash was her long-term savings from an inheritance but review of the serial numbers established that several of the bills were recorded currency from drug transactions with DAVENPORT over the prior several days. A total of $5,700 in recorded buy money was recovered from the currency stash in the WILLIAMS' room. The WILLIAMS' Galaxy 8 mobile devices were seized from them at the Signal Hill address during the search. During a search of the Youngwood residence to which the WILLIAMS' truck is registered, law enforcement found and seized roughly a kilo of cocaine and more than 500 grams of heroin.[3]

11. DAVENPORT was inside her Mews Hill apartment at the time of entry. During the search, law enforcement seized a Samsung S10 cellular phone, which DAVENPORT voluntarily admitted was hers, and an Apple iPad located in DAVENPORT's purse.[4] Your affiant knows from experience that iPads can be used in a manner similar to cellular phones, in that they can send and receive text messages, email, media messages, FaceTime calls and even phone calls through downloaded applications.

12. Based on the information provided in this affidavit, probable cause exists to believe that Aminee Jewel DAVENPORT, Mary Barnett WILLIAMS, and Michael Alphonso WILLIAMS aided, supported, facilitated and attempted to conceal the distribution and

---

[2] The substance was tested using a TruNarc analyzer with a positive result for methamphetamine but lab results have not yet been returned.

[3] Both of these substances as well tested positively with a TruNarc but lab results have not been obtained.

[4] DAVENPORT had been given Miranda warnings prior to making any statements to law enforcement about her phone.

7

possession with the intent to distribute controlled substances, in violation of the federal drug laws, and used their mobile devices in furtherance of this jointly undertaken criminal activity.

13. The aforementioned cellular phone devices are currently stored in the Non-Drug Evidence Vault at the Drug Enforcement Administration Roanoke Resident Office, located at 105 Franklin Road, in Roanoke, Virginia. Your affiant wrapped each electronic device in Mylar static shield bags to prevent wireless signals from reaching the devices. Your affiant knows from training and experience that mobile devices can erase data by timing out or receiving a signal from another source.

14. Your affiant also knows from training and experience that cellular phones and other mobile devices are a tool of drug distribution. Drug dealers often use text messaging to arrange drug deals. An analysis of call patterns can identify other drug dealers. Photographs or videos found on cellular telephones and electronic devices often show contraband, or locations where contraband may be found. Contact numbers stored in a mobile device may identify other drug dealers or associates. Your affiant also knows from training and experience that persons who distribute illegal narcotics use multiple devices in an effort to hide evidence of their crimes from law enforcement. All told, significant evidence of criminal activity can be found within mobile devices found in the possession of a drug dealer and his/her associates.

15. Based on the above, and upon my training and experience, there is probable cause to believe that the devices seized from DAVENPORT and Michael and Mary WILLIAMS contain information that constitutes records, fruits, instrumentalities, or evidence of violation of the federal drug laws; to wit, distribution and/or conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 846 and/or 841(a). I respectfully request that a search warrant be issued for these devices, as described more particularly in Attachment A, for

8

examination and seizure of all stored content related to drug trafficking and/or distribution, including, but not limited to the following:

    a. Text messages (incoming and outgoing);

    b. Emails (incoming and outgoing);

    c. Recent calls (incoming and outgoing);

    d. Missed calls;

    e. Contact lists;

    f. Digital codes;

    g. GPS and other location information;

    h. Appointment calendars; and

    i. Photographs, videos and other electronic images and media.

## TECHNICAL TERMS

16. Based on my training and experience, and participation in this and other firearm and drug trafficking investigations, and based upon my discussions with other agents and investigators, I know that:

    a. Individuals involved in illegal narcotics distribution commonly maintain cellular telephones, electronic mobile devices, pagers and other communication devices to further their firearms and narcotics trafficking activities. Narcotics traffickers often utilize these devices to relay a variety of illicit information, including, but not limited to, telephone numbers of co-conspirators, digital codes to identify the caller, digital codes to indicate the location of a meeting place, the amount of a controlled substance or its purchase price, or other information designed to facilitate criminal activity;

9

b. Individuals involved in illegal narcotics distribution commonly maintain in electronic storage mediums names, telephone numbers, recorded messages, photographs and other items of information concerning themselves and individuals associated with their criminal activities, including but not limited to cellular telephones, electronic mobile devices, digital cameras and recorders, memory storage cards, home computers, and computer storage disks;

c. Individuals involved in illegal narcotics distribution commonly take, or cause to be taken, photographs and videos of themselves, their associates, their property, their drugs, and/or their firearms. These photographs and videos are commonly stored in electronic storage mediums, including but not limited to cellular camera telephones, electronic mobile devices, digital cameras, memory cards, home computers, and computer storage disks;

d. Individuals involved in illegal narcotics distribution commonly maintain records in various forms of electronic or magnetic media, and in computers. Based upon my knowledge of electronic devices and also on information derived from forensic computer specialists, property search retrieval, analysis, documentation and authentication of all such electronically stored computer data requires laboratory analysis by a qualified computer specialist.

17. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), a warrant issued pursuant to this application would permit examination of the mobile device, which may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose parts of the device to human inspection in order to determine whether it contains evidence described by the warrant.

10

Case 7:19-mj-00089-RSB    Document 1-1    Filed 08/19/19    Page 10 of 11    Pageid#: 10

18. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

19. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the mobile device described in Attachment A to seek the items and evidence described in Attachment B.

Respectfully submitted,

_____
Ryan Sloan
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn before me
on August 19, 2019:

_____
UNITED STATES MAGISTRATE JUDGE
Robert S. Ballou